LNE

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

*Alexander Levin*
*Assistant United States Attorney*
*Alexander.Levin@usdoj.gov*

*Mailing Address:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*Office Location:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*DIRECT: 410-209-4948*
*MAIN: 410-209-4800*
*FAX: 410-962-0717*

✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

3:54 pm, Sep 09 2026

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY TTD Deputy

August 13, 2026

**Via Email Only**
Marshall T. Henslee, Esq.
Silverman Thompson
400 East Pratt Street, Suite 900
Baltimore, Maryland 21202

Re: United States v. Derian Green
Criminal No. BAH-24-289

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Derian Green (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **August 28, 2026**, it will be deemed withdrawn. The terms of the Agreement are as follows:

## Offense of Conviction

1. The Defendant agrees to plead guilty to Count One of the Superseding Information, which charges the Defendant with Laundering of Monetary Instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

## Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Superseding Information, in the District of Maryland and elsewhere:

a. the Defendant knowingly conducted and attempted to conduct a financial transaction affecting interstate commerce;

b. the transaction in fact involved the proceeds of specified unlawful activity to wit, distribution of a controlled substance in violation of 21 U.S.C. § 841(a);

c. the Defendant knew that the property involved in the transaction represented the proceeds of some form of unlawful activity; and

d. the transaction was designed, in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.

Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty in the Superseding Information are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1956(a)(1)(B)(i) | N/A | 20 years | 3 years | $500,000 or two times the amount involved | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant

agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant

may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

a. This Office and the Defendant further agree that the applicable **base offense level is 20**, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2S1.1(a)(2)[1] and 2B1.1(b)(1)(G), reflecting an addition of 12 levels to the starting level of 8 to account for the Defendant laundering more than $250,000 but less than $550,000.

[1] The parties agree that even if the defendant committed—or would be accountable for—the underlying drug trafficking offense giving rise to the money laundering, the offense level for that drug trafficking offense cannot be determined. Accordingly, the parties agree that the defendant's base offense level should be based on U.S.S.G. § 2S1.1(a)(2) rather than (a)(1).

b. The parties agree to an **increase of 6 levels**, pursuant to U.S.S.G. § 2S1.1(b)(1)(B)(i), because the Defendant knew or believed that any of the laundered funds were the proceeds of an offense involving the manufacture, importation, or distribution of a controlled substance.

c. The parties agree to an additional **increase of 2 levels**, pursuant to U.S.S.G. § 2S1.1(b)(2)(B), because the Defendant is pleading guilty to an offense under 18 U.S.C. § 1956.

d. The parties agree to a **4-level reduction** in the adjusted offense level, pursuant to U.S.S.G. § 3B1.2(a), because the Defendant was a minor participant in the criminal activity.

e. The parties agree to an additional **2-level reduction** in the adjusted offense level, pursuant to U.S.S.G. § 4C1.1(a), because the defendant meets all the criteria described in Section 4C1.1. This agreement is contingent upon a final determination that the defendant receives zero criminal history points under U.S.S.G. § 4A1.1.

f. This Office does not oppose a **2-level reduction** in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1-level decrease** in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

The final adjusted offense level for Count One is therefore **19**.

7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

Rule 11(c)(1)(C) Plea

9. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **60 months of probation** is the appropriate disposition of this case, taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

Obligations of the Parties

10. The parties agree to recommend a sentence of **60 months of probation**. This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Superseding Information. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

i. The Defendant reserves the right to appeal the sentence of imprisonment if the total sentence exceeds 60 months' probation; and

ii. This Office reserves the right to appeal the sentence of imprisonment if the total sentence is less than 60 months' probation.

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Forfeiture

12. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities: **approximately $282,016 in U.S. currency seized from the defendant's vehicle on or about September 17, 2024**.

14. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

Defendant's Conduct Prior to Sentencing and Breach

17. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal,

state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

19. The Court is not a party to this Agreement. Subject to paragraph 9 above, the sentence to be imposed is within the sole discretion of the Court. In the federal system, the sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, her attorney, nor the Court can make a binding prediction or promise that the Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

20. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Kelly O. Hayes
United States Attorney

Alexander Levin
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

8/21/26
Date

Derian Green
Defendant

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

8/21/26
Date

Marshall T. Henslee, Esq.
Counsel for Defendant

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

An investigation that began in early 2023, led by the Drug Enforcement Administration (DEA), Baltimore Division, and Homeland Security Investigations (HSI), Baltimore Division, into two separate non-fatal shootings of Michael Micklos, Jr. in Baltimore, Maryland revealed a sprawling network of individuals laundering millions of dollars generated from the illegal distribution of massive quantities of marihuana. In general, Michael Micklos and Malik Bridgers orchestrated the sale of bulk quantities of marihuana in Maryland, as well as in other states (including Virginia and New York). Micklos, Bridgers, and their co-conspirators would then transport the proceeds of those sales to a larger network of money launderers, primarily operating in the New York and New Jersey area and reporting to co-conspirator Can Xu. Xu and his network would, in turn, commingle the proceeds from Micklos' and Bridgers' organizations with other drug trafficking proceeds before transporting (via various means) the bulk U.S. currency to other money launderers and drug traffickers in Oregon, Washington, and elsewhere. All of the movement of proceeds was undertaken with the purpose of (1) using the proceeds as payment for further shipments of marihuana that would then be sold and (2) concealing the true nature and source of the proceeds.

Over the course of the investigation, agents recovered from co-defendants and other members of the conspiracy: over $6 million in U.S. currency and over 2,300 pounds of marihuana, as well as firearms, and ammunition.

Through a combination of intercepted communications, surveillance, and other evidence, agents identified Derian Green, the Defendant, as being involved in the conspiracy as a courier transporting marihuana and laundering drug trafficking proceeds at the direction of co-defendant Bridgers. Agents determined that the Defendant personally acted as a courier for marihuana and/or drug trafficking proceeds on multiple occasions, including the below examples:

<u>April 10, 2024 Marihuana Purchase</u>

On April 10, 2024, Bridgers called Xu to arrange the purchase of marihuana. During the call, Bridgers told Xu, "He said he be there at 6:55." Around 7:10 p.m., Agents surveilling an area in New York known to be used by the defendants for drop-offs saw the Defendant arrive to a parking lot, driving an Infiniti SUV bearing Maryland registration 4F18155 (the "Infiniti"), and meet with co-defendant Huayi Zhong, who was driving a black Chevrolet SUV bearing New York registration T706557C. After the two met, the Defendant left the area in the Infiniti.

Around 8:27 p.m. agents saw Bridgers park in the rear of 5961 Schering Road, Baltimore, Maryland—a stash location used by Bridgers and his immediate co-conspirators—and enter the residence. At 8:48 p.m., Bridgers called the Defendant and asked for his "ETA." The Defendant

said he would arrive by 10:00 p.m. Just after 10:00 p.m., agents saw the Defendant arrive to 5961 Schering Road in the Infiniti. Bridgers came out to meet the Defendant, and both of them took large plastic bags, containing marihuana, from the trunk of the Infiniti into the residence.

<u>April 23, 2024 Marihuana Purchase</u>

On April 23, 2024, agents surveilling a parking garage at 42-23 Parsons Boulevard, Flushing, New York, saw the Defendant standing with co-defendant Zebin Liu outside the garage. At the same time, agents intercepted a call between Bridgers and the Defendant, who discussed the Defendant having his vehicle loaded with a large amount of marihuana. Shortly after the marihuana was loaded in Green's vehicle, Bridgers called the Defendant again and told the Defendant that "they don't got no blankets," referring to blankets to cover the marihuana that had been loaded in the back of the car. Bridgers assured the Defendant that there was no need to worry because it was about to be dark, but he told the Defendant, referring to the marihuana, "Just make sure it's like—they try to put it like as close to window level as possible. Did they pack it good, or not for real?" And the Defendant replied, "Yeah, they packed it good. I mean, it's just a lot in here."

<u>September 17, 2024 Money Seizure</u>

On September 16, 2024, investigators intercepted a call between Xu and Bridgers regarding a planned transfer of drug trafficking proceeds and marihuana. When coordinating the timing of the exchange, Bridgers asked, "So don't send my boy up early?" And Xu confirmed, "Yeah, don't go early, we will be at the night." Later on September 16, investigators saw Bridgers at his apartment complex, where he transferred items from a rented grey 2024 Chevrolet SUV bearing Texas registration SWN9479 (the "Chevrolet") to a shopping cart. The items transferred included several shopping bags and a Dyson vacuum box. Bridgers took the cart into the building.

4 MTH/DA AHL

On September 17, 2026, in the morning, location data from Bridger's and the Defendant's phone showed that they were in the same area of Pikesville, Maryland. When investigators went to the area to begin physical surveillance, they noted that phones had moved apart. At around 10:20 a.m., investigators found the Defendant driving the Chevrolet on I-695 toward I-95. At around 11:02 a.m., a Maryland State Police officer conducted a traffic stop of the Chevrolet in North East, Maryland. Investigators searched the Chevrolet and found a Dyson vacuum box, which held approximately $282,016 in U.S. currency, separated into rubber-banded stacks.

At approximately 11:42 a.m., agents intercepted a call from Xu to co-defendant Huayi Zhong. During the call, Xu told Zhong, "Fuck, the black guy got pulled over just now, and I think all of the money has been fucking taken away." Agents believe that Xu was referring to the Defendant and the loss of the money that was seized by agents during the search of the Chevrolet.

The Defendant agrees that the above-described financial transaction affected interstate and foreign commerce and involved the proceeds of drug trafficking. The Defendant agrees that he knew that the property involved in the financial transaction was the proceeds of drug trafficking. The Defendant further agrees that he conducted the financial transaction knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of drug trafficking.

All the above-described transactions are representative of the courier work the Defendant undertook at the direction of Bridgers.

SO STIPULATED:

Alexander Levin
Assistant United States Attorney

Derian Green
Defendant

Marshall T. Henslee, Esq.
Counsel for Defendant